527 So.2d 830 (1988)
The SHELBY MUTUAL INSURANCE COMPANY, Appellant,
v.
Mary Lou SMITH, Appellee.
No. 4-86-2802.
District Court of Appeal of Florida, Fourth District.
May 11, 1988.
On Motion for Rehearing July 27, 1988.
Joan Fowler of Walton Lantaff Schroeder & Carson, and Patrick B. Flanagan of McAliley & Associates, West Palm Beach, for appellant.
Philip M. Burlington of Edna L. Caruso, P.A., and Kocha & Jones, P.A., West Palm Beach, for appellee.
PER CURIAM.
This is an appeal of a summary final judgment rendered by the Palm Beach County Circuit Court. We affirm.
Appellee Mary Lou Smith's amended complaint alleged that on or about March 9, 1985, Smith had been involved in an automobile accident caused solely by the fault of the other driver; that as a result of that accident she suffered permanent injuries including herniated discs, permanent disfigurement and permanent disability; and that the tortfeasor's insurance company paid to Smith the full limits of its insurance policy, $50,000, after Smith's insurer, appellant Shelby Mutual had provided permission for her to accept those policy limits.
The amended complaint also alleged that Smith had a motor vehicle insurance policy with Shelby Mutual which provided for uninsured/underinsured motorist coverage of $25,000; and that despite her having filed a proper claim for uninsured motorist benefits, Shelby Mutual denied coverage and Smith had to bring this action to obtain those benefits. Smith's amended complaint also alleged a violation of section 624.155, Florida Statutes, i.e., unfair claims settlement practice. Furthermore, Smith sought damages, attorney's fees and costs.
*831 Shelby Mutual filed an answer and counterclaim for Declaratory Relief. In its answer, Shelby Mutual admitted issuing the motor vehicle insurance policy to Smith and admitted the other material allegations of the amended complaint. However, it asserted as an affirmative defense that Smith's accident did not involve an "uninsured motor vehicle" as defined in section 627.727(3), Florida Statutes, and therefore she was not entitled to uninsured motorist coverage. In its counterclaim, Shelby Mutual sought declaratory relief determining that there was no uninsured motorist coverage for the subject accident, and it alleged that it was unsure of its rights under section 627.727, Florida Statutes, as amended in 1984, noting that there were no appellate opinions construing those amendments to the statute.
Smith filed a motion for summary judgment realleging the material allegations of her amended complaint and including therewith an affidavit supporting those allegations. Shelby Mutual did not file any affidavit or other sworn testimony contradicting Smith's affidavit.
The trial court entered an "Order/Summary Final Judgment" in favor of Smith concluding that she was entitled to $25,000 in uninsured motorist coverage under her policy with Shelby Mutual. The Order referred the parties to arbitration and the court retained jurisdiction for purposes of determining Smith's entitlement to attorney's fees and costs. This appeal followed.
The issue on appeal is whether the trial court erred in granting summary final judgment in favor of appellee Smith. Appellant Shelby Mutual contends the trial court erred in granting summary final judgment in favor of Smith as that, in effect, constituted an improper determination by the court that the tortfeasor's vehicle was an "uninsured motor vehicle" within the meaning of section 627.727(3), Florida Statutes (1983). Shelby Mutual argues that in light of the fact that the tortfeasor's vehicle had liability coverage in the amount of $50,000.00 and that Smith's vehicle had uninsured/underinsured motorist coverage in the amount of $25,000.00, it was improper for the trial court to conclude that the tortfeasor's vehicle met the statutory definition of "uninsured motor vehicle."
As of 1984, sections 627.727(1), (2) and (3), Florida Statutes, provided:
(1) No motor vehicle liability insurance policy shall be delivered or issued for delivery in this state with respect to any specifically insured or identified motor vehicle registered or principally garaged in this state unless uninsured motor vehicle coverage is provided therein or supplemental thereto for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness, or disease, including death, resulting therefrom. However, the coverage required under this section is not applicable when, or to the extent that, any insured named in the policy rejects the coverage in writing. When a motor vehicle is leased for a period of 1 year or longer and the lessor of such vehicle, by the terms of the lease contract, provides liability coverage on the leased vehicle, the lessee of such vehicle shall have the sole privilege to reject uninsured motorist coverage or to select lower limits than the bodily injury liability limits. Unless the named insured, or lessee having the privilege of rejecting uninsured motorist coverage, requests such coverage or requests higher uninsured motorist limits in writing, the coverage or such higher uninsured motorist limits need not be provided in or supplemental to any other policy which renews, extends, changes, supersedes, or replaces an existing policy with the same bodily injury liability limits when the named insured or lessee had rejected the coverage. When the named insured or lessee has initially selected limits of uninsured motorist coverage lower than his bodily injury liability limits, higher limits of uninsured motorist coverage need not be provided in or supplemental to any other policy which renews, extends, changes, supersedes, or replaces an existing policy with the same bodily injury liability limits unless the *832 named insured requests higher uninsured motorist coverage in writing. The rejection or selection of lower limits shall be made on a form approved by the Insurance Commissioner. The form shall fully advise the applicant of the nature of the coverage and shall state that the coverage is equal to bodily injury liability limits unless lower limits are requested or the coverage is rejected. The heading of the form shall be in 12-point bold type and shall state: "You are electing not to purchase certain valuable coverage which protects you and your family or you are purchasing uninsured motorist limits less than your bodily injury liability limits when you sign this form. Please read carefully." If this form is signed by a named insured, it will be conclusively presumed that there was an informed, knowing rejection of coverage or election of lower limits. The insurer shall notify the named insured at least annually of his options as to the coverage required by this section. Such notice shall be part of the notice of premium, shall provide for a means to allow the insured to request such coverage, and shall be given in a manner approved by the department. The coverage described under this section shall be over and above, but shall not duplicate, the benefits available to an insured under any workers' compensation law, personal injury protection benefits, disability benefits law, or similar law; under any automobile medical expense coverage; under any motor vehicle liability insurance coverage; or from the owner or operator of the uninsured motor vehicle or any other person or organization jointly or severally liable together with such owner or operator for the accident; and such coverage shall cover the difference, if any, between the sum of such benefits and the damages sustained, up to the maximum amount of such coverage provided under this section. The amount of coverage available under this section shall not be reduced by a setoff against any coverage, including liability insurance. Such coverage shall not inure directly or indirectly to the benefit of any workers' compensation or disability benefits carrier or any person or organization qualifying as a self-insurer under any workers' compensation or disability benefits law or similar law.
(2) The limits of uninsured motorist coverage shall be not less than the limits of bodily injury liability insurance purchased by the named insured, or such lower limit complying with the rating plan of the company as may be selected by the named insured. The limits set forth in this subsection, and the provisions of subsection (1) which require uninsured motorist coverage to be provided in every motor vehicle policy delivered or issued for delivery in this state, do not apply to any policy which does not provide primary liability insurance that includes coverage for liabilities arising from the maintenance, operation, or use of a specifically insured motor vehicle. However, an insurer issuing such a policy shall make available as a part of the application for such policy, and at the written request of an insured, limits up to the bodily injury liability limits contained in such policy.
(3) For the purpose of this coverage, the term "uninsured motor vehicle" shall, subject to the terms and conditions of such coverage, be deemed to include an insured motor vehicle when the liability insurer thereof:
(a) Is unable to make payment with respect to the legal liability of its insured within the limits specified therein because of insolvency; or
(b) Has provided limits of bodily injury liability for its insured which are less than the limits applicable to the injured person provided under uninsured motorist's coverage applicable to the injured person.
Prior to the 1984 amendments, section 627.727(1) allowed for the setoff of a tortfeasor's liability coverage against the injured party's underinsured motorist coverage; and section 627.727(2) required insurers to make available excess underinsured motorist coverage against which liability coverage could not be set off. The Florida *833 Legislature's 1984 amendments barred the setoff of liability coverage and eliminated the provision for excess underinsured motorist coverage. The amendment was made applicable to new and renewal policies with an effective date of October 1, 1984, or later. The Florida Legislature, however, did not amend section 627.727(3)  the language of which has been set forth above. The failure to amend subsection (3) has created confusion about the Legislature's intentions as to the extent and scope of this coverage. This confusion is exemplified by the conflicting positions taken by contributing authors in The Florida Bar's Continuing Legal Education publication on Florida automobile insurance law.
Appellant places great reliance on the argument and example set forth by Attorney William C. Merritt in The Florida Bar Continuing Legal Education's Florida Automobile Insurance Law, (1985), wherein he states:
The definition of "uninsured motor vehicle" or "underinsured motor vehicle" was not changed by the 1984 amendment. F.S. 627.727(3) continues to provide:
For the purpose of this coverage, the term "uninsured motor vehicle" shall ... be deemed to include an insured motor vehicle when the liability insurer thereof:
* * * * * *
(b) Has provided limits of bodily injury liability for its insured which are less than the limits applicable to the injured person provided under uninsured motorist's coverage applicable to the injured person.
It is true that F.S. 627.727(1) as amended clearly states that the amount of uninsured motorist coverage available to the insured "shall not be reduced by a setoff against any coverage, including liability insurance." By definition, however, there still must be an uninsured motorist claim. That is, uninsured motorist coverage must exceed the tortfeasor's liability coverage or there is no UM claim to begin with. See 627.727(3). But once there is, by definition, a UM claim, the full UM coverage is available to the extent of the damages sustained. For example, if the tortfeasor has $10,000 in liability coverage and the UM coverage also is $10,000, there is no UM claim; conversely, if the liability coverage is $10,000 and the UM coverage is $20,000 then the full $20,000 is available without any setoff as long as the UM benefits claimed are "over and above, [and do] not duplicate" the liability insurance benefits payable. 627.727(1).
Id. at 207-8.
Shelby Mutual argues that given the fact that the tortfeasor herein had $50,000.00 liability coverage (an amount double that of Smith's uninsured/underinsured coverage), there was no uninsured motorist claim to begin with and thus the $25,000.00 uninsured/underinsured coverage is not available to Smith.
It is interesting to note that while Shelby Mutual places great weight on Mr. Merritt's analysis of the uninsured/underinsured motorist coverage issue as set forth in Florida Automobile Insurance Law, it totally disregards the contrasting analyses of the same issue made by several coauthors of that publication  Louis K. Rosenbloum, Michael Maher and Herbert Hall, Jr. According to attorneys Maher and Hall:
[T]he 1984 amendment to F.S. 627.727 essentially redefined the concept of "underinsured motorist." Historically, the statute's language concerning underinsured motorists has been interpreted to mean a motorist whose available liability coverage is less than the uninsured motorist limits of the injured party's policy. Yaden v. Hanover Insurance Co., 375 So.2d 5 (Fla. 4th DCA 1979), cert. den. 383 So.2d 1205. See 627.727(3). The 1984 amendment implicitly redefines the term "underinsured motorist" to mean a motorist whose liability limits are insufficient to cover all of the injured party's damages. Only when the tortfeasor's liability coverage would be adequate to cover all damages, thus making any receipt of UM benefits duplicitous, would UM coverage be unavailable.

*834 In the authors' view, the amendment's effect is that there is no limitation on recovery of UM benefits even when the liability limits exceed the UM limits. For instance, if $80,000 in damages is caused by a tortfeasor with $50,000 liability limits, the injured party could recover up to $30,000 under the UM limits of his own policy. Such recovery is permissible under the amendment because it is "over and above, but [does] not duplicate" the liability benefits and covers "the difference, if any, between the sum of such benefits and the damages sustained." Although the 1984 amendment eliminates the provision for excess UM coverage it does so because all UM coverage is now "excess over" other available benefits.
The ramifications of the 1984 amendment on uninsured motorist recovery are substantial. First, it has changed UM insurance into a purer form of self insurance for injuries caused by others. No longer is recovery dependent on the limits of the tortfeasor's policy. As long as UM benefits do not duplicate recovery from other sources, they are recoverable. Since there is no offset, the benefits are recoverable even when UM limits are less than the tortfeasor's liability limits.
Second, in practice a UM claim can be filed in every case in which the tortfeasor's liability limits do not exceed the value of the injury. Arbitration then can be sought before a panel consisting of three attorneys. Once the panel decides the value of the claim, the injured party can recover the difference, if any, between the determined value and the tortfeasor's liability limits. The injured party, of course, is then free to take legal action to recover the tortfeasor's liability limits. Some companies are waiving arbitration and allowing suit.
Id. at 186-87.
Attorney Rosenbloum describes the problem created by the Florida Legislature's 1984 amendment as follows:
In amending F.S. 627.727(1) and (2) without revising 627.727(3), the legislature created an ambiguity with respect to excess uninsured motorist coverage. Under the amended statute, if an insured has $20,000 in UM coverage and the tortfeasor has only $10,000 in liability coverage, the insured driver, assuming his injuries are sufficient, can recover both the tortfeasor's coverage and all of his UM coverage for a total of $30,000. If the insured has only $10,000 in UM coverage instead of $20,000, he should be able to recover the tortfeasor's liability coverage and his own UM coverage for a total of $20,000. This appears to be the intended result of the 1984 amendments. But the legislature failed to redefine "uninsured motor vehicle" in 627.727(3) correspondingly. Subsection (3)(b) still requires that uninsured motorist coverage exceed the tortfeasor's liability coverage to render a motor vehicle uninsured. A literal reading of this subsection would result in the insured in the second example above receiving only the tortfeasor's coverage of $10,000.
A review of the Florida House of Representatives bill analysis for the 1984 amendments leads to the conclusion that the legislature intended for the insured to receive the entire $20,000 in the second example above. A reading of all of the 1984 amendments to F.S. 627.727 should lead to the same conclusion. While the courts should follow this more logical interpretation, the legislature should amend 627.727(3)(b) to eliminate any doubt or confusion.
Id. at 75.
Given the lack of any case law on the issue presented herein, Smith has furnished this court with the Florida House of Representatives Staff Summary and Analysis, in accordance with Ellsworth v. Insurance Company of North America, 508 So.2d 395 (Fla. 1st DCA 1987), relating to the 1984 changes to the uninsured motorist coverage statute. That summary specifically points out that the "new excess uninsured motorist coverage provides that the full limit of uninsured motorist protection is available in addition to, and not reduced by, the other party's liability coverage." An example of how this would operate under the earlier version of the law and under the revision to the law is set forth therein:

*835 [A]ssume a motorist purchases uninsured motorist coverage with limits of $10,000 per person, $20,000 per accident. He is involved in an accident with another motorist who has bodily injury liability insurance of $10,000 per person, $20,000 per accident. Under these facts, no uninsured motorist coverage is available if the motorist has purchased the standard uninsured motorist protection. If the motorist elected to purchase the excess uninsured motorist coverage, assuming the damages are sufficient, the full $10,000 excess UM would be available, in addition to the $10,000 liability insurance available from the other driver.
The preface to House Bill 319, the legislative enactment relevant hereto, reads as follows:
A bill to be entitled An act relating to insurance; amending s. 627.727, F.S., providing that uninsured motorist coverage is over and above any motor vehicle liability coverage; prohibiting setoffs; deleting the requirement that an insurer make available excess underinsured motor vehicle coverage; providing an effective date.
(emphasis added).
We conclude that the Legislature intended the 1984 amendment to section 627.727, Florida Statutes, to provide that all uninsured/underinsured motorist coverage be excess coverage and that it pay over and above the tortfeasor's liability coverage should said liability coverage be inadequate to fully compensate the injured insured. Although there is confusion regarding the proper application of section 627.727(3) given the enactment of the excess uninsured motorist concept, Smith accurately points out that the Florida Supreme Court has stated that "[i]t is a fundamental rule of statutory construction that legislative intent is the polestar by which the court must be guided, and this intent must be given effect even though it may contradict the strict letter of the statute." State v. Webb, 398 So.2d 820, 824 (Fla. 1981).
ANSTEAD, GLICKSTEIN and GUNTHER, JJ., concur.

ON MOTION FOR REHEARING
The petition for rehearing is denied and we write only to note that the appellant correctly points out in its petition for rehearing that the First District has issued a conflicting opinion on the same issue we have resolved. See U.S.F. & G. Co. v. Woolard, 523 So.2d 798 (Fla. 1st DCA 1988).
ANSTEAD, GLICKSTEIN and GUNTHER, JJ., concur.