HERSEY, Chief Judge.
Appellant, Georgianna Park, was injured in an automobile accident in which the driver of the other vehicle, Debra Johnson, was determined to be at fault. Johnson’s insurer paid its policy limits of $100,000 to Park. Alleging damages in excess of this amount, Park brought suit against her own insurer, Wausau Underwriters Insurance Company (Wausau), based upon her underinsured motorist coverage. Wausau, in turn, brought an action for declaratory relief. The two actions were consolidated and the trial court entered summary final judgment for Wausau which is appealed here.
The issue is whether the underinsured motorist coverage afforded Park by her policy is of the type described as “offset,” as successfully argued in the trial court by Wausau, or “excess,” as maintained by Park. If the former, the coverage of $50,-000 provided by Park’s policy would be more than offset by her $100,000 recovery, thus reducing her entitlement to zero. If the underinsured coverage is “excess,” then she can recover for her damages in excess of $100,000 up to the underinsured coverage of $50,000.
In finding the underinsured motorist coverage to be “offset” rather than “excess,” the trial court relied upon section 627.-727(2)(b), Florida Statutes (1983), which was in effect on the latest renewal date of the policy. That statute provided in part:
An insurer shall not provide both uninsured motor vehicle coverage and excess underinsured motor vehicle coverage in the same policy.
The statute was subsequently amended and this provision was eliminated. While the amendment does not have retroactive effect, the question is whether it may or should be considered as a clarification of legislative intent and thus a codification of the public policy which controls in this situation.
It seems evident at the outset that the policy was intended to provide “excess” rather than “offset” coverage. The term, “underinsured motor vehicle” is defined in the policy as a land motor vehicle of any type:
To which a bodily injury liability bond or policy applies at the time of the accident but its limit for bodily liability is not enough to pay the full amount the covered person is legally entitled to recover as damages.
Recent case law has also made clear that the 1984 amendment to section 627.727 intended all uninsured/underinsured motorist coverage to be excess coverage and that it pay over and above the tortfeasor’s liability coverage should that liability coverage be inadequate to fully compensate the injured insured. See Government Employees Ins. Co. v. Brewton, 538 So.2d 1375 (Fla. 4th DCA 1989); Shelby Mut. Ins. Co. v. Smith, 527 So.2d 830 (Fla. 4th DCA 1988). In Smith, this court explained:
Prior to the 1984 amendments, section 627.727(1) allowed for the setoff of a tortfeasor’s liability coverage against the injured party’s underinsured motorist coverage; and section 627.727(2) re *215 quired insurers to make available excess underinsured motorist coverage against which liability coverage could not be set off. The Florida Legislature’s 1984 amendments barred the setoff of liability coverage and eliminated the provision for excess underinsured motorist coverage. The amendment was made applicable to new and renewal policies with an effective date of October 1, 1984, or later.
Id. at 832-33.
The general rule is that a contract (such as an insurance policy) which is violative of a statute or public policy will not be enforced by the courts. See, e.g., Wechsler v. Novak, 157 Fla. 703, 26 So.2d 884 (1946) (the general right to contract is subject to limitation that agreement must not violate federal or state constitutions or state statutes or ordinances of a city or town or some rule of the common law); Department of Motor Vehicles v. Mercedes-Benz of North America, Inc., 408 So.2d 627 (Fla. 2d DCA 1981) (on grounds of public policy, clauses in a contract which violate a statutory provision are nugatory and will not be given effect); Bond v. Koscot Interplanetary, Inc., 246 So.2d 631 (Fla. 4th DCA 1971) (generally, an agreement which violates a statute or is contrary to public policy is illegal, void and unenforceable' as between the parties).
On the other hand, it has been held that where the statute does not expressly declare the contract void, the contract may be enforced. The case of Talco Capital Corp. v. Canaveral International Corp., 225 F.Supp. 1007, 1013 (S.D.Fla.1964), aff'd, 344 F.2d 962 (5th Cir.1965), states the general proposition that “a contract in violation of a statute, which statute does not expressly declare such contract to be void, will be enforced unless there is some other indication within the statute of legislative intent to invalidate such contract.” The district court applied this general rule in examining whether a loan made to a Florida corporation from a small business investment company licensed under the Small Business Investment Act violated a provision of that Act. The court found that “even if it is assumed that the loan did violate the regulation, such ‘illegality’ is insufficient to render ... the loan ... unenforceable.” Id.
On balance, we think the public policy is better served in this case by a finding that the policy provides “excess” rather than “offset” underinsured motorist coverage and we so hold. The policy provides for “excess” coverage; the insured paid a premium for “excess” coverage; and the legislature has since clarified its intention to permit excess coverage to be provided in conjunction with uninsured motorist coverage.
We therefore reverse and remand for further appropriate proceedings.
REVERSED AND REMANDED.
STONE and WARNER, JJ., concur.