553 So.2d 1287 (1989)
METROPOLITAN PROPERTY AND LIABILITY INSURANCE COMPANY, Appellant,
v.
Barbara CLINTON and Bruce Clinton, Appellees.
No. 87-3040.
District Court of Appeal of Florida, Third District.
December 5, 1989.
Magill & Lewis and R. Fred Lewis, Miami, for appellant.
High, Stack, Lazenby, Palahach & Goldsmith and Charles Stack, Coral Gables, for appellees.
Before HUBBART and FERGUSON, JJ., and BARFIELD, EDWARD T., Associate Judge.
PER CURIAM.
The final summary judgment under review is reversed, and the cause is remanded to the trial court with directions to enter a final summary judgment in favor of the uninsured motorist insurer herein, Metropolitan Property and Liability Insurance Co., upon a holding that there is no uninsured motorist coverage under the circumstances of this case. We reach this result because the insured party with the uninsured motorist coverage herein, Barbara Clinton, was not injured by an "uninsured motor vehicle" as defined by Section 627.727(3), Florida Statutes (1987).[1]
*1288 First, we conclude that "the 1984 amendments to section 627.727, Florida Statutes, did not change the definition of an uninsured motor vehicle enunciated in section 627.727(3)(b), Florida Statutes (1983)," and that "an uninsured motor vehicle continues to be a vehicle for which the limits of bodily injury liability for its insured are less than the limits applicable to the injured person's uninsured motorist coverage." Marquez v. Prudential Property & Casualty Ins. Co., 534 So.2d 918 (Fla. 3d DCA 1988); see United States Fidelity & Guar. Co. v. Woolard, 523 So.2d 798 (Fla. 1st DCA 1988). Because the motor vehicle which injured Barbara Clinton herein carried two bodily injury liability policies which, all told, had limits exceeding the Clintons' uninsured motorist coverage limits, it is clear that Barbara Clinton was not injured by an "uninsured motor vehicle" under Section 627.727(3)(b), Florida Statutes (1987). We certify, however, that this holding is in conflict with Shelby Mutual Insurance Co. v. Smith, 527 So.2d 830 (Fla. 4th DCA 1988) and Morrison v. Universal Underwriters Insurance Co., 543 So.2d 425 (Fla. 5th DCA 1989). See also Park v. Wausau Underwriters Ins. Co., 547 So.2d 213 (Fla. 4th DCA 1989); Government Employees Ins. Co. v. Brewton, 538 So.2d 1375 (Fla. 4th DCA 1989).
Second, we conclude that where, as here, one of the liability insurers for the tortfeasor motorist becomes insolvent, and the Florida Insurance Guaranty Association [FIGA] steps into the shoes of this insolvent insurer, making good on the claim of the injured party, the latter has not been injured by an "uninsured motor vehicle" under Section 627.727(3)(a), Florida Statutes (1987). Plainly, FIGA, under these circumstances, is "deemed the insurer [of the tortfeasor] to the extent of its obligation in the covered claims, and, to such extent, shall have all rights, duties, and obligations of the insolvent insurer as if the insurer had not become insolvent." § 631.57(1)(b), Fla. Stat. (1987). This being so, it follows that Barbara Clinton was not injured by a motor vehicle with a liability insurer which was "unable to make payment with respect to the legal liability of its insured," § 627.727(3)(a), Fla. Stat. (1987); to the contrary, FIGA, as the substituted liability insurer of the aforesaid motor vehicle, was, in fact, able to, and did, make payment to Barbara Clinton with respect to the legal liability incurred by said motor vehicle for her injuries.
Reversed and remanded.
HUBBART and FERGUSON, JJ., concur.
BARFIELD, J., Associate Judge (dissenting).
I respectfully dissent with respect to the first issue discussed by the majority. I agree that the legislature created an ambiguity in not clarifying the definition of uninsured motor vehicle in the 1984 amendment, but in construing the amendment to have changed nothing with respect to an uninsured motor vehicle renders meaningless all of those specific changes that the legislature did effect. By not recognizing what I consider to be the clear intent of the legislature that all UM coverage is excess coverage, the court has created its own concept of uninsured motorist protection. It would now seem that all UM coverage is excess coverage if the policy provides more UM coverage than the tortfeasor's policy provides liability coverage. If there is not more UM coverage, then what exists is valueless to the injured party, as it is not excess coverage. Until the legislature chooses to act again on this matter, I would follow the decision in Shelby Mutual Insurance *1289 Co. v. Smith, 527 So.2d 830 (Fla. 4th DCA 1988).
I agree with my colleagues with respect to the second issue discussed in the opinion.
NOTES
[1] This statute provides as follows:

"(3) For the purpose of this coverage, the term `uninsured motor vehicle' shall, subject to the terms and conditions of such coverage, be deemed to include an insured motor vehicle when the liability insurer thereof:
(a) Is unable to make payment with respect to the legal liability of its insured within the limits specified therein because of insolvency; or
(b) Has provided limits of bodily injury liability for its insured which are less than the limits applicable to the injured person provided under uninsured motorist's coverage applicable to the injured person."
§ 627.727(3), Fla. Stat. (1987).