# LIBERTY MUTUAL INSURANCE COMPANY v MENDELSOHN
## Case No. 90-24325
Thirteenth Judicial Circuit, Hillsborough County
March 15, 1991

## OPINION OF THE COURT

GUY W. SPICOLA, Circuit Judge.

### ORDER ON DEFENDANT, LOUIS B. MENDELSOHN'S, MOTION FOR SUMMARY JUDGMENT

THIS MATTER came before the court on Defendant, LOUIS B.

MENDELSOHN's Motion for Summary Judgment on the declaratory judgment action brought by Plaintiff, LIBERTY MUTUAL INSUR-ANCE COMPANY. The court has reviewed its files and the memoranda and affidavits of the parties, has conducted its own research, and is otherwise fully advised in the premises.

## FACTS OF THE CASE

The Defendant ("MENDELSOHN") purchased a personal catastrophe policy in the amount of $1,000,000 from the Plaintiff ("LIBERTY") bearing policy number LJ1-251-295123-001 with an effective date of November 18, 1982. The personal catastrophe policy provides uninsured motorist ("UM") coverage for two vehicles and charged separate premiums for each vehicle. The subject policy contains, *inter alia,* the following definition:

Uninsured automobile means a land motor vehicle or trailer of any type: . . .

2. To which a bodily injury liability bond or policy applies at the time of the accident but its limit for bodily injury liability is less than the limit for bodily injury liability specified in the Schedule below for Underlying Policy UM limits. . .

MENDELSOHN had in effect an Underlying UM Policy with limits of $10,000 per person and $20,000 per accident issued by LIBERTY, bearing policy number A02-251-368939-004. The underlying UM policy also insured two vehicles and charged MENDELSOHN separate premiums for uninsured motorist coverage for each vehicle.

On July 22, 1983, MENDELSOHN was involved in an automobile accident with an automobile owned and operated by Donald Foster and a third vehicle owned and operated by Brenda Roberts. At the time of the accident, Donald Foster and Brenda Roberts were jointly and severally liable for damages. Although Brenda Roberts' vehicle was uninsured, Donald Foster's automobile was insured by State Farm Mutual Automobile Insurance Company with liability limits of $25,-000. MENDELSOHN settled with Donald Foster for the policy limits of $25,000.

MENDELSOHN made an uninsured motorist claim pursuant to the policies in effect at the time of the accident. LIBERTY denied coverage under the uninsured motorist policies. Thereafter, MENDELSOHN requested arbitration regarding his claim.

On November 13, 1990, prior to arbitration, LIBERTY filed a Complaint for Declaratory Judgment pursuant to Chapter 86 Florida

Statutes requesting that this court determine the rights and obligations of the respective parties under the subject insurance policies. In its Complaint, LIBERTY contends that no UM claim is provided under the UM coverage of MENDELSOHN's personal catastrophe policy under the facts of this case, because MENDELSOHN was not involved in an accident with an "uninsured automobile" as defined in the policy.

On November 26, 1990, MENDELSOHN filed his Answers and Defenses to Complaint for Declaratory Judgment and a Counterclaim for declaratory relief. MENDELSOHN contends that the personal catastrophe policy violates Florida Statutes § 627.727(2)(b) (1982) which forbids an insurer from providing uninsured motor vehicle coverage and excess motor vehicle coverage in the same policy. MENDELSOHN's Counterclaim requests that this court find that the excess policy provides UM coverage for MENDELSOHN's accident, that MENDELSOHN is entitled to stack the available UM coverage for a total of $2,020,000, and that MENDELSOHN is entitled to attorney's fees and costs.

On December 20, 1990, MENDELSOHN filed a Motion for Summary Judgment on the declaratory judgment action brought by LIBERTY. A hearing was held on the Motion for Summary Judgment before this court on February 25, 1991.

In order to enter summary judgment, a court must find that there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. *Deauville Operating Corp. v Town & Beach Plumbing Co.,* 123 So.2d 353 (Fla. 3d DCA 1960). For the reasons discussed below, this court finds that there is no genuine issue of material fact and that MENDELSOHN is entitled to judgment as a matter of law.

## ISSUE I

WHETHER THE SUBJECT POLICY PROVIDES BOTH UM COVERAGE AND EXCESS UM COVERAGE IN THE SAME POLICY IN VIOLATION OF FLORIDA STATUTES SECTION 627.727(2)(b) (Supp. 1982)?

MENDELSOHN contends that LIBERTY has violated Florida Statutes § 627.727(2)(b) (Supp. 1982) by including both UM coverage and excess underinsured coverage in same policy. In 1982, MENDELSOHN, who had existing UM coverage with LIBERTY, was offered renewal of his UM policy and was offered a personal catastrophe policy in the form of a Florida UM Option Form. MENDELSOHN chose to renew the $10,000 UM coverage and on the Option Form chose to

purchase $1,000,000 of UM coverage under a personal catastrophe policy. MENDELSOHN contends that the personal catastrophe policy provides excess underinsured coverage as required by F. S. § 627.727(2)(b) (Supp. 1982). LIBERTY, however, contends that the personal catastrophe policy does not provide excess underinsured coverage and even if the court finds that it does, that the subject policy does not provide both UM and excess underinsured coverage in the same policy.

This court finds that whether or not the personal catastrophe policy is considered excess underinsured coverage, the subject policy does not provide for both UM and excess insurance in the same policy.

MENDELSOHN's UM coverage of $10,000 was issued and renewed under policy number A02-251-368939-004. MENDELSOHN's personal catastrophe policy was issued under policy number LJ-251-295123-001. MENDELSOHN was merely offered a renewal of a previous UM policy at the same time that he was offered the separate personal catastrophe policy and was not "provided" UM coverage under the personal catastrophe policy. Further, on the renewal offering, the form states that "Failure to return this form will result in your renewal policy being issued with Uninsured Motorist Coverage the same limits carried on your expiring policy," thus, affirming that the renewal form that MENDELSOHN signed was merely a request for reissuance of his UM policy and was not the policy which provided him UM coverage. This court finds, as a matter of law and fact, that LIBERTY has not provided both UM coverage and excess UM coverage in the same policy and is not in violation of F.S. § 627.727(2)(b) (Supp. 1982).

## ISSUE II

### WHETHER THE DEFENDANT, MENDELSOHN, IS ENTITLED TO UM COVERAGE UNDER THE PERSONAL CATASTROPHE POLICY AND UNDERLYING UM POLICY ISSUED BY PLAINTIFF, LIBERTY?

In order to determine whether MENDELSOHN is entitled to UM coverage, this court must determine what type of insurance was offered in the personal catastrophe policy. LIBERTY contends that the personal catastrophe policy is merely an umbrella UM policy and does not provide excess underinsured coverage. MENDELSOHN contends that the personal catastrophe policy offers him excess underinsured coverage as required by F.S. § 627.727(2)(b) (Supp. 1982).

Assuming that LIBERTY is correct and the personal catastrophe policy is merely an umbrella UM policy, then in order to determine whether UM coverage applies as excess over the tortfeasor's coverage

the court must first decide whether MENDELSOHN was involved in an accident with an "uninsured motor vehicle". *Shelby Mutual Insurance Co. of Shelby, Ohio v Smith,* 556 So.2d 393 (Fla. 1990). If the vehicle is uninsured or underinsured, then UM coverage is excess over the tortfeasor's liability coverage. If the vehicle is not uninsured or underinsured, then there is nothing upon which to predicate a claim for UM coverage. *Shelby,* 556 So.2d at 396.

Upon reviewing the statute and policy it is apparent that there is a conflict between the statutory and policy definitions of "uninsured motor vehicle". Florida Statutes Section 627.727(3)(b) (1982), which applies herein, states that for the purpose of uninsured and underinsured motor vehicle coverage the term of uninsured motor vehicle shall, subject to the terms and conditions of such coverage, include a motor vehicle when the liability limits "are less than the limits applicable to the injured person provided under uninsured motorist's coverage applicable to the injured person." The subject policy, as discussed previously, defines an uninsured motor vehicle as follows:

Uninsured automobile *means a land motor vehicle or trailer of any type:* . . .

2. To which a bodily injury liability bond or policy applies at the time of the accident but its limit for bodily injury liability is less than the limit for bodily injury liability specified in the Schedule below for Underlying Policy UM limits . . . A conflict arises because LIBERTY's personal catastrophe policy limits UM coverage by comparing the tortfeasor's liability limits with the defendant's "underlying UM limits", while the statute compares the tortfeasor's liability limits with the injured person's "applicable UM coverage".

It is well settled in Florida that where a contract of insurance is entered into on a matter surrounded by statutory limitations and requirements the parties are presumed to have entered into the agreement with reference to the statute and the statutory provisions become a part of the contract. *Standard Accident Insurance Co. v Gavin,* 184 So.2d 229 (Fla. 1st DCA 1966). In interpreting an automobile insurance policy the courts have followed the definitions given in the policy itself, "but only where the definition is applicable to the coverage assumed and if not contrary to statutory limitations and requirements." *Standard Marine Insurance Co. v Allyn,* 333 So.2d 497 (Fla. 1st DCA 1976). Because the language of the statute and the policy herein conflict, and based on the foregoing case law, the statutory language controls. Assuming that the personal catastrophe policy provides umbrella UM coverage, rather than excess underinsured coverage, this

164

court finds that pursuant to the statute the tortfeasor's liability limit is to be compared with the "UM coverage applicable" to MENDEL-SOHN, including the umbrella UM policy.

Additionally, the purpose of UM is to compensate an insured motorist and make him whole when involved in an accident with an uninsured or underinsured motorist. *Bayles v State Farm,* 483 So.2d 402 (Fla. 1985). If the personal catastrophe policy is a UM policy, then, as written, it violates this policy. The courts have consistently rejected, as against public policy, attempts by insurers to limit the applicability of UM coverage. *Bayles,* 483 So.2d at 403. Under LIBER-TY's policy language, insureds who purchased umbrella UM could possibly receive no compensation or insufficient compensation even though they had paid premiums for a sufficient amount of UM coverage.

Assuming that the personal catastrophe policy is umbrella UM coverage and applying the statutory definition herein, this court finds that the UM coverage applicable to MENDELSOHN is $1,010,000. per vehicle. The tortfeasor's liability limit of $25,000. is, therefore, not less than the UM limits applicable to MENDELSOHN and MEN-DELSOHN's accident occurred with an "uninsured motor vehicle" as required in order to receive UM coverage.

If this court assumes instead that MENDELSOHN is correct and the personal catastrophe policy is really excess UM coverage as required by Florida Statutes, the court arrives at a similar finding. If the personal catastrophe policy offers excess underinsured coverage, then the policy is governed by F. S. § 627.727(2)(b) (Supp. 1982). This section of the statute states that excess underinsured motor vehicle coverage provides coverage when the tortfeasor's liability insurer has provided limits of bodily injury liability for its insured which are "less than the damages of the injured person purchasing such excess under-insured motor vehicle coverage." As stated in *Morrison v Universal Underwriters Ins. Co.,* 543 So.2d 425 (Fla. 5th DCA 1989), the statutory definition of uninsured motorist does not apply as a threshold determination in regard to excess underinsured coverage. The only threshold question is whether the tortfeasor's liability limits were insufficient to cover all of the injured party's damages. *Morrison,* 543 So.2d at 417. Thus, if MENDELSOHN is correct, the personal catastrophe policy provides him excess underinsured coverage if the tortfeasor's liability limits of $25,000 were less than the damages MENDELSOHN incurred.

In either scenario, it is apparent that the insurance purchased by

**165**

MENDELSOHN will cover any damages, up to the policy limits, that MENDELSOHN sustained as a result of his accident which were not covered by the tortfeasor's $25,000 liability limits. However, LIBERTY was required by law to offer MENDELSOHN excess UM coverage on the date that LIBERTY offered the personal catastrophe policy to MENDELSOHN. Therefore, this court finds that as a matter of law and fact, the LIBERTY MUTUAL INSURANCE COMPANY policy in existence on the day of the accident provided MENDELSOHN with excess UM coverage as required by Florida Statutes § 627.727(2)(b) (Supp. 1982) and that the rights and obligations of the parties are to be determined by such statute.

## ISSUE III

WHETHER THE DEFENDANT, MENDELSOHN, UNDER THE UM AND EXCESS UM POLICIES HE PURCHASED COVERING TWO VEHICLES, WITH SEPARATE PREMIUMS CHARGED FOR EACH AND WHICH STATE PER PERSON ACCIDENT POLICY LIMITS, IS ENTITLED TO AGGREGATE OR "STACK" THE COVERAGE PROVIDED FOR EACH VEHICLE NOTWITHSTANDING THE CONTRARY POLICY PROVISIONS?

The Florida courts have definitely answered this question in the affirmative. In *Sellers v United States Fidelity & Guaranty Co.,* 185 So.2d 689 (Fla. 1966) the Court found that an insured protected by more than one policy of uninsured motorist insurance was entitled to recover under all such policies to the extent of his bodily injury by an uninsured motorist. This rule was further affirmed by the Florida Supreme Court in *Tucker v Government Employees Insurance Co.,* 288 So.2d 238 (Fla. 1973). In *Tucker,* the Court stated as follows:

> The total uninsured motorist coverage which the insured has purchased for himself and his family regardless of the number of vehicles covered by his auto liability policy insures to him or any member of his family when injured by an uninsured motorist . . . The determinant of the amount of coverage is the total which the insured purchases pursuant to the authority of the statute and not that which the insurer otherwise attempts to limit by a provision in the policy.

*Tucker,* 288 So.2d at 242.

Therefore, this court finds that, as a matter of law, MENDELSOHN is entitled to stack the combined limits of his UM policies, which equals $1,010,000, for each of two vehicles, for an aggregate of $2,020,000.

## CONCLUSION

This court finds that there are no genuine issues of material fact and that MENDELSOHN is entitled to a judgment as a matter of law. The policy issued by LIBERTY and in existence on the day of the subject accident provided MENDELSOHN with excess UM coverage as required by Florida Statutes. The rights and obligations of the parties in regard to the excess UM coverage are thus governed by Florida Statutes § 627.727 (Supp. 1982). Additionally, because MENDELSOHN purchased UM coverage and excess UM coverage on two vehicles which were billed and paid separately, MENDELSOHN is entitled to stack the UM coverage for a total of $2,020,000.

For the foregoing reasons, it is hereby,

ORDERED AND ADJUDGED that the Defendant's Motion for Summary Judgment is GRANTED.

DONE AND ORDERED in Chambers at Tampa, Hillsborough County, Florida, this 15th day of March, 1991.