In re the Arbitration of Hardy and
Sandy ONASCH, Respondents,

v.

AUTO–OWNERS INSURANCE
COMPANY, Appellant.

No. C7–89–539.

Court of Appeals of Minnesota.

Aug. 22, 1989.
Review Denied Oct. 25, 1989.

James C. Wicka, Minneapolis, for respondents.

James A. Reding, Mark A. Pilney, St. Paul, for appellant.

Heard, considered and decided by SHORT, P.J., CRIPPEN and SCHULTZ *, JJ.

## OPINION

SHORT, Judge.

Auto–Owners Insurance Company appeals the trial court's judgment enforcing an arbitration award and ordering appellant to pay underinsurance benefits to respondents Hardy and Sandy Onasch. The arbitrators found that respondents had sustained $150,000 in damages but did not determine any liability issues. After arbitration, respondents settled with the tortfeasor for an amount below the tortfeasor's policy limits, and, after properly notifying appellant of the settlement, brought a motion to compel appellant to pay the "gap" between the settlement proceeds and the liability coverage limits. The trial court granted the motion, and judgment was issued. We affirm.

## FACTS

Respondent Hardy Onasch was injured on May 8, 1986, when the car he was driving struck a trailer stopped on the highway. The accident happened during the night, and the trailer was stationary and in a traffic lane, without any warning lights. The vehicle pulling the trailer was insured by Economy Fire and Casualty Insurance Company with liability limits of $100,000.

---

* Acting as judge of the Court of Appeals by appointment pursuant to Minn. Const. art. 6, § 2.

Respondents' vehicle was insured by appellant Auto–Owners Insurance Company, and had underinsured motorist (UIM) coverage limits of $100,000. Respondents brought an action against the owner of the vehicle pulling the trailer. Before that lawsuit was resolved, however, respondents sought to arbitrate their UIM claim against appellant. Appellant at first refused to arbitrate, and the trial court denied respondents' motion to compel arbitration. Shortly after the trial court denied that motion, this court decided *Broton v. Western National Mutual Insurance Co.*, 413 N.W.2d 829 (Minn.Ct.App.1987). As a result of that decision, appellant voluntarily entered into an arbitration agreement with respondents.[1]

The arbitrators were asked to determine respondents' damages, but not to apportion fault. They found that respondents "have sustained general damages over and above no-fault benefits paid, in the amount of $150,000." After arbitration, respondents notified appellant's attorney that they intended to settle with the tortfeasor's insurer for $60,000. Respondents provided this notice 30 days before they intended to accept the settlement, and invited appellant to preserve its subrogation rights by substituting its own check, as specified in *Schmidt v. Clothier*, 338 N.W.2d 256, 263 (Minn.1983). Appellant's attorney refused to substitute a check or to acquiesce in the settlement. Appellant claims that no UIM benefits are available where, as here, the UIM coverage limits are the same as the tortfeasor's liability insurance limits.

Respondents settled with the tortfeasor's liability carrier on October 4, 1988, and signed a contract releasing the tortfeasor and its insurer from any further liability. Respondents then brought a motion before the trial court to compel enforcement of the arbitration award by requiring that appellant pay to respondents the $40,000 gap between the amount of the settlement and the tortfeasor's liability limits. The trial court granted that motion, and judgment was entered against appellant in the amount of $40,000.

## ISSUE

May an insured whose underinsurance coverage limits are equal to the tortfeasor's liability coverage limits recover underinsured motorist benefits after settling with the tortfeasor for an amount below the tortfeasor's policy limits?

## ANALYSIS

The parties do not dispute the facts in this case, but raise an issue of statutory interpretation. The construction of a statute is a question of law and is subject to de novo review on appeal. *Hibbing Education Association v. Public Employment Relations Board*, 369 N.W.2d 527, 529 (Minn.1985).

The Minnesota Supreme Court, interpreting former Minn.Stat. § 65B.49, subd. 4a (1988), has held that "the maximum liability of the insurer with respect to underinsured motorist coverage is the lesser of the difference between the limits of UIM coverage set out in the policy * * * and the amount which has been paid or will be paid to the insured by or for the tortfeasor * * *, or the amount of damages sustained but not recovered." *Broton v. Western National Mutual Insurance Co.*, 428 N.W.2d 85, 90 (Minn.1988); *Thommen v. Illinois Farmers Insurance Co.*, 437 N.W.2d 651, 654 (Minn.1989). In the present case, respondents' UIM limits are $100,000. The parties do not dispute that $100,000 is the most money respondents can recover, even though the arbitrators found that respondents sustained $150,000 in damages.

■ Appellant argues that because the liability limits in the tortfeasor's policy are equal to the underinsured coverage in respondents' own policy, no underinsured benefits are available. Appellant essentially maintains that because the tortfeasor's liability coverage is equal to respondents' underinsured coverage, the tortfeasor is

---

1. The Supreme Court later overruled this court's decision in *Broton*. *See Broton v. Western National Mutual Insurance Co.*, 428 N.W.2d 85 (Minn.1988).

not an underinsured motorist. Some historical perspective is necessary to an understanding of this statutory issue.

The Minnesota Supreme Court, interpreting the underinsured motorist law then in force, held in *Lick v. Dairyland Insurance Co.*, 258 N.W.2d 791, 794 (Minn.1977) that "it is only to the extent that the [UIM] coverage exceeds the tortfeasor's insurance that the tortfeasor is underinsured." In other words, the injured person could recover from the underinsurer the difference between the UIM limits and the tortfeasor's primary coverage limits. This method of calculating available underinsurance benefits became known as the "difference of limits." *Broton*, 428 N.W.2d at 88.

The Minnesota No–Fault Automobile Insurance Act was amended in 1977. In 1980, the Minnesota Supreme Court, interpreting the 1977 amendments, held that the amendments effectively overruled the "difference of limits" method for determining the underinsurer's maximum liability. Instead, UIM recovery was to be calculated according to an "add-on" method, whereby UIM benefits are payable to the extent the insured's damages exceed the tortfeasor's liability limits. *Holman v. All Nation Insurance Co.*, 288 N.W.2d 244, 251 (Minn. 1980).

Then, in 1983, the Minnesota Supreme Court considered whether, in addition to recovering the difference between the amount of damages and the tortfeasor's policy limits, an injured insured could also recover from the UIM carrier the "gap" between the settlement proceeds and the liability limits of the tortfeasor's policy. The supreme court answered this question in the negative, holding that an "underinsurer is liable only for the amount of damages suffered by the insured in excess of the liability limits of the defendant." *Schmidt*, 338 N.W.2d at 261. The court reasoned that allowing the insured to recover the "gap" would discourage vigorous settlement negotiations with the primary

insurer, and would expose the underinsurer to a risk over which it had no control. *Id.* However, three dissenting justices suggested that these risks could be avoided without imposing a hardship on the insured if the insured "negotiate[s] the best possible settlement," and informs the underinsurer of the settlement. *Id.* at 264 (Todd, J., joined by Amdahl, C.J., and Scott, J., concurring and dissenting). "If it is not satisfied, the offer should be rejected, the underinsured carrier should immediately pay the amount of the offer to the injured party, and they should immediately proceed to arbitration." *Id.*

In 1985, the legislature again amended the No–Fault Automobile Insurance Act to include the statutory provision at issue in this case. The amended version provided:

> With respect to underinsured motor vehicles, the maximum liability of an insurer is the lesser of the difference between the limit of underinsured motorist coverage and the amount paid to the insured by or for any person or organization who may be held legally liable for the bodily injury; or the amount of damages sustained but not recovered.

Minn.Stat. § 65B.49, subd. 4a (1988). During the same session, the legislature provided the following definition of "underinsured motor vehicle:"

> "Underinsured motor vehicle" means a motor vehicle or motorcycle to which a bodily injury liability policy applies at the time of the accident but its limit for bodily injury liability is less than the amount needed to compensate the insured for actual damages.

Minn.Stat. § 65B.43, subd. 17 (1988).[2]

After these amendments were enacted, the Minnesota Supreme Court was asked to decide whether, under section 65B.49, subd. 4a, an injured plaintiff could recover underinsurance benefits up to the dollar amount of the damages sustained. The supreme court held that under the 1985 amendment, "the maximum liability of the [under] insurer * * * is the lesser of the difference

---

**2.** In the present case, respondents sustained $150,000 in damages, while the tortfeasor's bodily injury coverage was $100,000. Since damages exceed the liability coverage limits, the tortfeasor's vehicle is "underinsured."

between the limits of UIM coverage * * * and the amount which has been paid or will be paid to the insured by or for the tortfeasor or tortfeasors, or the amount of damages sustained but not recovered." *Broton,* 428 N.W.2d at 90.

The *Broton* court also said that an effect of the 1985 amendment was to overrule the holding in *Schmidt.* The court wrote:

By pegging the UIM insurer's maximum liability to the "amount paid" the insured by or for the tortfeasor, the legislature effectively codified the position of the *Schmidt* dissenters, who argued that an insured who communicates the tortfeasor's settlement offer to the UIM insurer should be entitled to recover the gap from the UIM insurer.

*Broton,* 428 N.W.2d at 89–90.

Appellant argues that despite this clear language in the statute and in *Broton,* neither the legislature nor the Minnesota Supreme Court intended to allow recovery under the facts of this case. Appellant first maintains that in passing section 65B.49, subd. 4a, the legislature intended to reenact the "difference of limits" method for calculating underinsured motorist benefits. The statute, however, specifies that the insured may recover "the difference between the limit of underinsured motorist coverage and the *amount paid* to the insured by or for [the tortfeasor]" (emphasis added). This language clearly allows the insured to recover the "gap" between the tortfeasor's policy limits and the amount of the settlement. Had the legislature intended to reenact the *Lick* rule, it easily could have limited the insured's recovery to the difference between the UIM coverage limits and the tortfeasor's liability coverage limits. When, as here, the language of a statute is unambiguous, the court must enforce its clear meaning. Minn.Stat. § 645.16 (1988); *Tuma v. Commissioner of Economic Security,* 386 N.W.2d 702, 706 (Minn.1986).

Appellant also argues that under *Broton,* UIM recovery is permitted only when it is impossible for the insured to obtain a settlement equal to the tortfeasor's liability limits. While the *Broton* court did recognize that a situation involving multiple claimants may prevent an individual claimant from settling for the full amount of the tortfeasor's insurance, *Broton,* 428 N.W.2d at 89, the court did not distinguish such situations from those in which a single claimant settles for an amount below the liability limits. *Id.* at 89–90. In either case, the UIM carrier has the option of tendering a check for the amount of the settlement, and then compelling arbitration or proceeding to trial. *See Schmidt,* 338 N.W.2d at 263–64.

The injured party, however, retains the primary responsibility of negotiating a reasonable settlement with the tortfeasor's insurer before turning to his or her own UIM coverage. The Minnesota Supreme Court recently emphasized that:

Underinsured motorist coverage is not an alternative to liability coverage. This is not some optional protection which an injured party can choose in lieu of asserting a claim against an insured tortfeasor.

*Johnson v. American Family Mutual Insurance Co.,* 426 N.W.2d 419, 422 (Minn. 1988). Indeed, the dissenters in *Schmidt,* whose position the 1985 legislature and the *Broton* court adopted, stressed that "[t]he injured party should negotiate the best possible settlement" with the tortfeasor's insurer before seeking the available UIM coverage. *Schmidt,* 338 N.W.2d at 264 (Todd, J., joined by Amdahl, C.J., and Scott, J., concurring and dissenting).

Appellant argues that making the UIM carrier responsible for paying the "gap" discourages a good settlement by tempting the insured to settle for an amount well below the tortfeasor's policy limits. Appellant's concerns are not without merit; similar concerns motivated the court's holding in *Schmidt.* The 1985 legislature, however, effectively reversed the *Schmidt* decision, and placed upon the UIM carrier the responsibility of monitoring its interest in the outcome of its insured's settlement with the tortfeasor. If, as in the present case, liability is at issue, the UIM carrier may compel arbitration to determine the fault of the respective parties. Such a procedure does not place an unfair burden on the UIM carrier, and is not comparable to a jury trial in terms of time or expense.

This procedure gives the underinsurer the power to veto the proposed settlement, and allows it to protect its interest in the outcome of the case.

Under the legislature's most recent amendment of section 65B.49, subd. 4a, the "gap" between the settlement proceeds and the tortfeasor's liability limits is still recoverable. As amended, the statute now provides:

> With respect to underinsured motorist coverage, the maximum liability of an insurer is the amount of damages sustained but not recovered from the insurance policy of the driver or owner of any underinsured at fault vehicle.

1989 Minn.Laws ch. 213, § 2; 1989 Minn. Laws ch. 356, § 20. Although the new statute appears to overrule the principal holding in *Broton*, it does not alter the insured's ability to recover the difference between the actual settlement proceeds and the tortfeasor's policy limits, even if those limits do not exceed the UIM limits.

## DECISION

An injured insured may recover from the UIM carrier the gap between the actual settlement proceeds and the tortfeasor's liability insurance limits, even though the UIM coverage limits do not exceed the tortfeasor's liability limits.

Affirmed.