400 S.E.2d 575

**Joyce A. PRISTAVEC**

v.

**WESTFIELD INSURANCE COMPANY.**

**No. 19688.**

Supreme Court of Appeals of
West Virginia.

Dec. 14, 1990.

---

David W. Frame, Clarksburg, for Joyce A. Pristavec.

James A. Varner, Catherine D. Munster, McNeer, Highland & McMunn, Clarksburg, for Westfield Ins. Co.

James C. Peterson, Amicus Chair Barry Hill, WVRLA President (Formerly W.Va. Trial Lawyers Assoc.), Charleston, for amicus curiae.

**McHUGH, Justice:**

This case presents the precise question which was not presented to this Court in *State Automobile Mutual Insurance Co. v. Youler*, 183 W.Va. 556, 396 S.E.2d 737 (1990), specifically, whether, for purposes of underinsured motorist coverage, the extent of such coverage (up to policy limits) is calculated by a subtraction of the amount of the tortfeasor's liability insurance actually available to the injured person in question from the amount of the injured person's damages, when the amount of the tortfeasor's liability insurance actually available to the injured person in question is equal to or greater than the underinsured motorist coverage limits. For the reasons set forth below, we answer this question in the affirmative.

### I

The plaintiff, Joyce Pristavec, was injured on March 2, 1987, when the motor vehicle which she was driving collided with a motor vehicle owned by a Leonard Williams. The plaintiff alleged that Williams' negligence proximately caused her damages in excess of $200,000.

Williams had automobile liability insurance with limits of $100,000 per person. Williams' automobile liability insurer paid $100,000 to the plaintiff.[1]

The plaintiff is insured by the defendant, Westfield Insurance Company, which provides underinsured motorist coverage to the plaintiff with limits of $100,000 per person.

The plaintiff brought an action, removed by the defendant to the United States District Court for the Northern District of West Virginia ("the federal district court"), for a declaration that the defendant is liable to the plaintiff under the underinsured motorist coverage for her damages in excess of the $100,000 limits of Williams' liability insurance policy, up to the limits of her underinsured motorist coverage, that is, for $100,000. The plaintiff moved for summary judgment. The defendant also moved for summary judgment, claiming that underinsured motorist coverage was not applicable under the statutory definition of "underinsured motor vehicle," *W.Va.Code*, 33–6–31(b) [1982, 1988], because the amount of the tortfeasor's *liability* insurance limits actually available to the plaintiff was *not less than* the plaintiff's *underinsured* motorist coverage limits, but, instead, the two coverage limits were *equal*.[2]

Pursuant to the Uniform Certification of Questions of Law Act, *W.Va.Code*, 51–1A–1 to 51–1A–10 [1976], the federal district court certified the following question to this Court:

> **WHETHER,** under West Virginia Code, Section 33–6–31(b), the plaintiff (Pristavec) is entitled to recover from the defendant (Westfield) her legal damages, up to the policy limits of her underinsured motorists' insurance, without setoff against proceeds received by the plaintiff from her own or any other policy, where the tortfeasor's liability insurance has been exhausted by a payment of policy limits to the plaintiff and where the policy limits of the tortfeasor's liability insurance and the plaintiff's underinsured motorists' insurance are equal?

### II

In syllabus point 4 of *State Automobile Mutual Insurance Co. v. Youler*,

> ance applicable at the time of the accident, but the limits of that insurance are either (i) *less than* limits the insured carried for underinsured motorists' coverage, or (ii) has [sic; "have"] been reduced by payments to others injured in the accident to limits *less than* limits the insured carried for underinsured motorist's ["motorists'" in 1988 version] coverage.

(emphasis by the defendant)

---

1. The plaintiff had notified her own insurer providing underinsured motorist coverage that Williams' liability insurer had offered to settle for $100,000.

2. The statutory definition of "underinsured motor vehicle," contained in both the 1982 and 1988 versions of *W.Va.Code*, 33–6–31(b), is as follows:

   'Underinsured motor vehicle' means a motor vehicle with respect to the ownership, operation, or use of which there is liability insur-

183 W.Va. 556, 396 S.E.2d 737 (1990), we held:

> *W.Va.Code,* 33–6–31(b), as amended, on uninsured and underinsured motorist coverage, contemplates recovery, up to coverage limits, from one's own insurer, of full compensation for damages not compensated by a negligent tortfeasor who at the time of the accident was an owner or operator of an uninsured or underinsured motor vehicle. Accordingly, the amount of such tortfeasor's motor vehicle liability insurance coverage actually available to the injured person in question is to be deducted from the total amount of damages sustained by the injured person, and the insurer providing underinsured motorist coverage is liable for the remainder of the damages, but not to exceed the coverage limits.

In *Youler,* the amount of the tortfeasor's *liability* insurance actually available to the injured person in question was *less than* the *underinsured* motorist coverage limits; therefore, in *Youler,* an "underinsured motor vehicle," as defined by *W.Va.Code,* 33–6–31(b) [1982, 1988], *see supra* note 2, was clearly involved. Here, in contrast, the amount of the tortfeasor's liability insurance actually available to the injured person in question is *equal* to the underinsured motorist coverage limits. This case,

then, involves the question of whether there is a definitional threshold, by statute, requiring "underinsured motor vehicle" *status* as a condition precedent to applying *Youler'*s method of computing the *extent* of underinsured motorist coverage.[3]

We believe underinsured motor vehicle status is required, but we believe that, despite the literal meaning of the definitional part of the statute in isolation, the unmistakable spirit of the statute as a whole provides for such status when the amount of the tortfeasor's motor vehicle liability insurance actually available to the injured person in question is less than the amount of *damages* sustained by the injured person, regardless of whether such liability insurance limits actually available are less than the underinsured motorist coverage limits.

Statutes in the various states on underinsured motorist coverage differ as to when such coverage is activated and, if activated, as to the extent of such coverage.[4] In this case we are concerned with the question of when underinsured motorist coverage is activated. The almost unique situation presented to us involves: (1) a statute which is *internally inconsistent* in that the statutory *definition* of an "underinsured motor vehicle" compares the amount

---

**3.** In *Youler,* this Court concluded that the proper method of calculating the *extent* of underinsured motorist coverage was a full compensation approach by which the amount of the tortfeasor's liability insurance was set off against the amount of damages, rather than setting off the amount of the tortfeasor's liability insurance against the underinsured motorist coverage limits. However, in *Youler,* we did not reach the question presented here:

> While *W.Va.Code,* 33–6–31(b), as amended, clearly requires this full compensation approach to the computation of underinsured motorist coverage when, as in this case, the injured person's underinsured motorist coverage limits *exceed* the alleged tortfeasor's motor vehicle liability insurance coverage limits actually available to the injured person in question, and, therefore, the alleged tortfeasor's vehicle was an 'underinsured motor vehicle' as defined in that statute, this Court is aware of a possible internal inconsistency in this statute, by virtue of the legislature's definition of 'underinsured motor vehicle.' That definition, comparing the tortfeasor's liability

insurance limits with underinsured motorist coverage limits, instead of comparing the liability limits with the total amount of damages sustained by the injured person, causes confusion in cases, *unlike here,* when the underinsured motorist coverage limits are *equal to or less than* the tortfeasor's liability limits, but such liability limits are less than the total amount of damages.

*Youler,* 183 W.Va. at 568, 396 S.E.2d at 749 (emphasis in original). Continuing in note 13 of *Youler,* 183 W.Va. at 568, 396 S.E.2d at 749, we left "to another day the question of whether the proper comparison for underinsured *status* is between the tortfeasor's liability insurance limits and the amount of damages, as opposed to between the tortfeasor's liability insurance limits and the underinsured motorist coverage limits." (emphasis in original) That question is presented for decision in the case now before this Court.

**4.** For a discussion of the two basic statutory approaches to calculation of the extent of underinsured motorist coverage, once activated, see

of the tortfeasor's *liability* insurance with the *underinsured* motorist coverage limits (the former ostensibly must be *less than* the latter), while the *extent* of underinsured motorist coverage (subject to the policy limits) is calculated under the statute by comparing the amount of the tortfeasor's *liability* insurance with the amount of *damages*, rather than with the underinsured motorist coverage limits; and (2) a case in which the amount of the tortfeasor's liability insurance is *not less than*, but, instead, is equal to or greater than, the amount of the underinsured motorist coverage limits (but does not fully compensate for the damages sustained). This Court is aware of two reported opinions of state courts of last resort which address this precise situation.

The first such opinion is *Stracener v. United Services Automobile Association*, 777 S.W.2d 378 (Tex.1989) (9–0 opinion). In that case the amount of the tortfeasor's liability insurance actually available to the injured person in question was $27,500. The amount of the underinsured motorist coverage limits in question was $15,000. The Supreme Court of Texas held that the underinsured motorist coverage was applicable and that the amount of such coverage (up to policy limits) was calculated by reducing the amount of damages by the amount of the tortfeasor's liability insur-

ance actually available to the injured person in question. In holding that the underinsured motorist coverage was applicable, the court vitiated a statutory definition of "underinsured motor vehicle" which was virtually identical to the definition of that term set forth in *W.Va.Code*, 33–6–31(b) [1982, 1988]. *Stracener*, 777 S.W.2d at 381.[5] The court observed:

> [U]nless the statutory language is construed, as we have done here, ... underinsured motorist coverage would offer most motorists only nominal protection. Where the tortfeasor and the injured insured comply with the minimum statutory requirements, the underinsured motorist coverage for which the policyholder has paid a premium would be worthless unless there were multiple claimants with substantial damages.
>
> ... We doubt whether most Texas motorists understand that the amount of the coverage for which they are paying is only recoverable depending upon the limits of the liability coverage carried by the negligent driver.... Even if they did, we believe this is not the coverage mandated by statute.

777 S.W.2d at 383–84.[6]

The other opinion of a state court of last resort which addresses the precise situa-

---

*Youler*, 183 W.Va. at 566–67, 396 S.E.2d at 747–48.

**5.** The statute involved in *Stracener*, namely, *Tex.Ins.Code Ann.* art. 5.06–1(2)(b) & art. 5.06–1(5) (Vernon 1981) provides, in material part:

> (2) For the purpose of these coverages:
> ....
> (b) The term 'underinsured motor vehicle' means an insured motor vehicle on which there is valid and collectible liability insurance coverage with limits of liability for the owner or operator which were originally lower than, or have been reduced by payment of claims arising from the same accident to, an amount less than the limit of liability stated in the underinsured coverage of the insured's policy.
> ....
> (5) The underinsured motorist coverage shall provide for payment to the insured of all sums which he shall be legally entitled to recover as damages from owners or operators of underinsured motor vehicles because of bodily injury or property damage in an amount up to the limit specified in the policy,

reduced by the amount recovered or recoverable from the insurer of the underinsured motor vehicle.

**6.** This same result as to activation (and extent) of coverage is required explicitly by several states' underinsured motorist statutes, for example, the current Minnesota statute. *See Onasch v. Auto–Owners Insurance Co.*, 444 N.W.2d 587, 589, 591 (Minn.Ct.App.1989), *review denied* (Minn. Oct. 25, 1989) (statute now ‑ defines "underinsured motor vehicle" by comparing amount of tortfeasor's liability insurance with amount of damages, and statute now provides for the extent of underinsured motorist coverage by making same comparison).

We agree with the conclusion in *Stracener* that a literal application of the definition of "underinsured motor vehicle," requiring the amount of the tortfeasor's *liability* insurance to be *less than* the *underinsured* motorist coverage limits, would result in *essentially* worthless, or, as some courts refer to it, "illusory," underinsured motorist coverage when the injured person has underinsured motorist coverage in an amount equal to (or less than) the amount of

tion involved here is *Shelby Mutual Insurance Co. v. Smith,* 556 So.2d 393 (Fla.1990) (4–2 opinion; one justice not participating). *Shelby* reaches the opposite conclusion than that reached in *Stracener.* In *Shelby,* the amount of the tortfeasor's liability insurance actually available to the injured person in question was $50,000. The amount of the underinsured motorist coverage limits was $25,000. The majority of the Supreme Court of Florida held that the underinsured motorist coverage was not applicable. The court believed that the statutory definition of underinsured motor vehicle, requiring the amount of the tortfeasor's *liability* insurance to be *less than* the amount of the *underinsured* motorist coverage limits, was unambiguous and that *under such definition* there was no occasion to resort to the part of the statute calculating the *extent* of underinsured motorist coverage (which subtracts the amount of the tortfeasor's *liability* insur-ance from the amount of *damages* ), be-cause the tortfeasor's *liability* coverage *exceeded* the *underinsured* motorist cover-age limits and, thus, there was no underin-sured motor vehicle. *Id.* at 395–96.[7]

The dissenters in *Shelby,* however, opined that the *overall* intent of the statute was for underinsured motorist coverage to be activated whenever the amount of *dam-ages* exceeded the amount of the tort-feasor's liability insurance. As to the stat-utory definition of underinsured motor ve-hicle, the dissenters stressed that the liter-al meaning of that part of the statute must yield to the overall legislative intent. Therefore, "the majority opinion exalts form over substance to frustrate the legis-lative will." *Shelby,* 556 So.2d at 398 (dis-senting opinion).

A leading commentator on underinsured motorist coverage has stated "that the pub-lic would be well served by structuring the

the tortfeasor's liability insurance actually avail-able to the injured person in question.

The most common scenario for finding "illu-sory" underinsured motorist coverage is when the injured person has the statutory minimum amount of underinsured motorist coverage and the tortfeasor, from the same state, has the statutory minimum amount of motor vehicle liability insurance coverage, and those two amounts are equal. For example, the statutory minimum amount of motor vehicle liability in-surance coverage in the State of West Virginia is $20,000 for bodily injury to one person ($40,000 for bodily injury to two or more persons per accident and $10,000 for property damage). *W.Va.Code,* 17D–4–2 [1979]. Under *W.Va.Code,* 33–6–31(b) [1982, 1988], these same amounts are the minimum levels of underinsured motor-ist coverage which must be offered.

There are, however, two possible situations in which a person with the statutory minimum amount of underinsured motorist coverage would not have "illusory" (worthless) underin-sured motorist coverage. In addition to the possible situation, noted in *Stracener,* in which there are initially equal coverages but the amount of the tortfeasor's liability insurance is reduced below the underinsured motorist cover-age limits by the claims of multiple claimants with substantial damages, we also recognize the possibility that the tortfeasor could be a motor-ist from out of state with liability coverage in an amount allowed by statute in that state and which is less than the underinsured motorist coverage limits in question. *See Meridian Mu-tual Insurance Co. v. Richie,* 544 N.E.2d 488, 489 (Ind.1989), *on reh'g; * 3 I. Schermer, *Automobile*

*Liability Insurance* § 35.04[3A], at 35–45 to 35–46 (2d ed. rev. 1990).

These two possibilities notwithstanding, the *Stracener* conclusion as to illusory coverage is valid as a general principle.

More significantly, unlike the emphasis in *Stracener* upon the payment of a premium for essentially *worthless* coverage, this Court's focus here, as in *Youler,* is upon the fact that the preeminent public policy in this state under the underinsured motorist statute is the full com-pensation of the injured party for his or her damages not compensated by a negligent tort-feasor, up to the limits of the underinsured motorist coverage. *Youler,* 183 W.Va. at 564, 396 S.E.2d at 745. A comparison of the amount of the tortfeasor's liability insurance with the underinsured motorist coverage limits certainly does not further that preeminent public policy. A comparison of the amount of the tortfeasor's liability insurance with the amount of the dam-ages does further that policy.

7. The same conclusion as in *Shelby* was reached as to *W.Va.Code,* 33–6–31(b), as amended, in *Stone v. Motorists Mutual Insurance Co.,* 654 F.Supp. 205 (S.D.W.Va.1986). The court in *Stone,* like the court in *Shelby,* emphasized the plain meaning of the statutory definition of "underinsured motor vehicle." In *Stone,* the amount of the tortfeasor's liability insurance and the amount of the underinsured motorist coverage limits were equal.

This Court believes that the *Shelby* and *Stone* courts focused too narrowly upon the statutory definition of "underinsured motor vehicle" in isolation from the remainder of the statute.

underinsured motorist coverage so as to maximize—rather than minimize—the [entitlement to and the] extent of protection afforded by the coverage and [by] charg[ing] an appropriate premium for such insurance." 2 A. Widiss, *Uninsured and Underinsured Motorist Insurance* § 35.2, at 47 (2d ed. 1990). This same commentator is very critical of overly restrictive definitions of an "underinsured motor vehicle." To give credence to these restrictions would be "to commit the same mistake—or to perpetrate the identical 'short-changing of the public'—that the insurance industry made in regard to the uninsured motorist insurance." *Id.* § 35.15, at 62; *see also id.* § 41.7, at 101.

Analyzing *W.Va.Code,* 33–6–31(b) [1982, 1988] in its entirety, we will not ascribe to the legislature an intent to "shortchange" the public by an overly restrictive definition of an "underinsured motor vehicle." An overly restrictive definition of that term would be one which is inconsistent with the preeminent public policy of the statute as a whole, specifically, the full compensation of the injured party for his or her damages not compensated by a negligent tortfeasor, up to the limits of the underinsured motorist coverage.[8] Some well established rules of statutory construction support our holding on legislative intent under the underinsured motorist statute.

■ The Court held in syllabus point 8, in part, of *Wellsburg & State Line R.R. v. Pan[h]an[d]le Traction Co.,* 56 W.Va. 18, 48 S.E. 746 (1904): "In the construction of a statute, its spirit, rather than its letter, is the guiding star[.]" This same point was made in syllabus point 2 of *Click v. Click,* 98 W.Va. 419, 127 S.E. 194 (1925):

It is the duty of a court to construe a statute according to its true intent, and give to it such construction as will uphold the law and further justice. It is as well the duty of a court to disregard a construction, though apparently warranted by the literal sense of the words in a

statute, when such construction would lead to injustice and absurdity.

*See also* syl. pt. 1, *State v. Kerns,* 183 W.Va. 130, 394 S.E.2d 532 (1990) (that which is plainly within the spirit, meaning and purpose of a remedial statute, though not therein expressed in terms, is as much a part of it as if it were so expressed); *Pryor v. Gainer,* 177 W.Va. 218, 222, 351 S.E.2d 404, 408 (1986) (if literal meaning of statute is inconsistent with meaning or intent of legislature, or would lead to perverse results, words of statute must be interpreted to reflect intention of legislature); syl. pt. 6, in part, *State ex rel. Cohen v. Manchin,* 175 W.Va. 525, 336 S.E.2d 171 (1984) (effect should be given to spirit, purpose and intent of lawmakers without limiting the interpretation in such a manner as to defeat underlying purpose of statute); syl. pt. 2, *McVey v. Chesapeake & Potomac Telephone Co.,* 103 W.Va. 519, 138 S.E. 97 (1927) (a thing within the legislative intention is regarded as within the statute, though not within the letter thereof).

The Supreme Court of the United States has applied similar principles. For example, that court has concluded that courts should not adhere blindly to the superficial, literal meaning of a statute if the literal meaning would produce a harsh and incongruous result, *Reed v. The [Steamship] Yaka,* 373 U.S. 410, 414–15, 83 S.Ct. 1349, 1353, 10 L.Ed.2d 448, 452–53 (1963), and statutes should be interpreted to avoid untenable distinctions and unreasonable results, *American Tobacco Co. v. Patterson,* 456 U.S. 63, 71, 102 S.Ct. 1534, 1538, 71 L.Ed.2d 748, 756–57 (1982). *See also State v. Kerns,* 183 W.Va. 130, 135, 394 S.E.2d 532, 537 (1990) (a court's duty is to avoid whenever possible a construction of a statute which leads to absurd, inconsistent, unjust or unreasonable results).

■ Another relevant rule of statutory construction is that "[i]n the construction of a legislative enactment, the intention of the legislature is to be determined, not

---

**8.** This Court, in *Youler,* concluded that this was the preeminent public policy of the statute. *See* *supra* note 6 (the last paragraph thereof).

from any single part, provision, section, sentence, phrase or word, but rather from a general consideration of the act or statute in its entirety." Syl. pt. 1, *Parkins v. Londeree*, 146 W.Va. 1051, 124 S.E.2d 471 (1962). *Accord*, syl. pt. 5, in part, *Fruehauf Corp. v. Huntington Moving & Storage Co.*, 159 W.Va. 14, 217 S.E.2d 907 (1975).

Finally, the uninsured/underinsured motorist statute, *W.Va.Code*, 33–6–31(b), as amended, "is remedial in nature and, therefore, must be construed liberally in order to effect its purpose." Syl. pt. 7, in part, *Perkins v. Doe*, 177 W.Va. 84, 350 S.E.2d 711 (1986).[9]

In accordance with these rules of statutory construction, and in light of the preeminent public policy of the underinsured motorist statute, which is to provide full compensation, not exceeding coverage limits, to an injured person for his or her damages not compensated by a negligent tortfeasor, this Court holds that underinsured motorist coverage is activated under *W.Va.Code*, 33–6–31(b), as amended, when the amount of such tortfeasor's motor vehicle liability insurance actually available to the injured person in question is less than the total amount of damages sustained by the injured person, regardless of the comparison between such liability insurance limits actually available and the underinsured motorist coverage limits.

To hold otherwise would create the untenable distinction between those persons who can afford to purchase underinsured motorist coverage with relatively high coverage limits and who ordinarily would be entitled to the full compensation benefits of the underinsured motorist statute, and those persons who can afford to purchase underinsured motorist coverage with only the minimum or relatively low coverage limits and who ordinarily would not be entitled to underinsured motorist coverage. We do not believe the legislature intended such an unjust result.

Accordingly, this Court answers in the affirmative the certified question submitted by the federal district court, and

9. The plaintiff has submitted the statements of two of the three sponsors of the legislation amending *W.Va.Code*, 33–6–31(b) in 1988. That amendment added explicit language barring set-offs of the tortfeasor's liability insurance against the underinsured motorist coverage limits. *See Youler*, 183 W.Va. at 569, 396 S.E.2d at 750. The sponsors' statements indicate that their intent was, *inter alia*, to clarify the original intent that underinsured motorist coverage is activated when the amount of the tortfeasor's liability insurance is less than the amount of damages, regardless of whether the amount of the tortfeasor's liability insurance is less than, equal to or greater than the underinsured motorist coverage limits. We have *not* considered these sponsors' statements, for "[o]rdinarily a court cannot [properly] consider the individual views of members of the Legislature or city council which are offered to prove the intent and meaning of a statute or ordinance after its passage and after litigation has arisen over its meaning and intent." Syl. pt. 1, *Cogan v. City of Wheeling*, 166 W.Va. 393, 274 S.E.2d 516 (1981). *See also California Teachers Association v. San Diego Community College District*, 28 Cal.3d 692, 699–701, 621 P.2d 856, 860–61, 170 Cal.Rptr. 817, 821–22 (1981) (en banc) (legislator's statement is admissible only when it is a reiteration of legislative discussion and events leading to adoption of proposed legislation, rather than merely an expression of personal opinion or motive).

Similarly, the defendant has submitted a copy of two bills, one offered in 1988 and one in 1990, each of which would, if passed, have amended *W.Va.Code*, 33–6–31(b) by explicitly defining an "underinsured motor vehicle" in terms of the comparison between the amount of the tortfeasor's liability insurance and the amount of damages. Both of these proposed legislative amendments failed to pass. We have *not* considered the rejection of these two bills as indicative of any particular legislative intent on this subject, for "[a]bstracts of bills or of changes proposed in existing statutes ... shall not be construed or interpreted as indicating or expressing legislative intent." *W.Va.Code*, 2–2–12 [1965]. *Cf. Bryant v. Yellen*, 447 U.S. 352, 376, 100 S.Ct. 2232, 2245, 65 L.Ed.2d 184, 202 (1980) (failures to enact suggested amendments, although having some weight, are not reliable indications of legislative intent); *Title Insurance & Trust Co. v. County of Riverside*, 48 Cal.3d 84, 97, 767 P.2d 1148, 1156, 255 Cal.Rptr. 670, 678 (1989) (en banc) (failure of legislature to amend an existing statute is inconclusive and has little interpretive value; legislature may have determined that clarification of existing statute on that point was unnecessary); 2A N. Singer, *[Sutherland on] Statutes and Statutory Construction* § 48.18, at 341 (Sands 4th ed. rev.1984) (rejection of a bill may occur because legislation already covers that point sufficiently, not because of disagreement with the merits of the bill).

this case is dismissed from the docket of this Court.

Certified question answered; case dismissed.

NEELY, Chief Justice, dissenting:

### The Dialogue

*Mr. Justice Wossname:* Mr. Chief Justice, I move that the statute be amended by deleting the following language:

"Underinsured motor vehicle" means a motor vehicle with respect to the ownership, operation, or use of which there is liability insurance applicable at the time of the accident, but the limits of that insurance are either (i) less than limits the insured carried for underinsured motorists' coverage, or (ii) has been reduced by payments to others injured in the accident to limits less than limits the insured carried for underinsured motorist's coverage.

And by substituting in lieu thereof the language:

"Underinsured motorist" means when the amount of such tortfeasor's motor vehicle liability insurance actually available to the injured person in question is less than the total amount of damages sustained by the injured person, regardless of the comparison between such liability insurance limits actually available and the underinsured motorist coverage limits.

*The Chief Justice:* The question now is on the passage of the amendment. All those in favor of the amendment will say aye, those opposed no, the clerk will prepare the machine. On this question four ayes, one nay, none absent and not voting; more than a majority having voted in the affirmative, I declare the amendment passed. Are there further amendments? The chair hears none. The question now is on the passage of the statute. All those in favor of the statute will vote aye, those opposed, no, the clerk will prepare the machine. On this question four ayes, one nay, none absent and not voting, more than a majority having voted in the affirmative, I declare the statute passed.

*Mr. Justice Wossname:* Mr. Chief Justice, I move the statute take effect retroactively, and on this question ask unanimous consent that the roll call used in the passage of the statute be used to make it so effective.

*The Chief Justice:* Is there objection? The chair hears none. On this question four ayes, one nay, none absent and not voting, more than two-thirds having voted in the affirmative, I declare that the statute takes effect retroactively.

### The Disclaimer

Now none of this is to say that I'm above doing a little legislating from time to time myself. But I usually find a constitutional principle that trumps an obsolete or ill conceived statute, *State ex rel. Harris v. Calendine,* 160 W.Va. 172, 233 S.E.2d 318 (1977), or I just "interpret" the statute out of existence, *Garska v. McCoy,* 167 W.Va. 59, 278 S.E.2d 357 (1981).

### The Policy

Underinsured motorist coverage is not one of those issues touching isolated or insular minorities. *United States v. Carolene Products Co.,* 304 U.S. 144, 58 S.Ct. 778, 82 L.Ed. 1234 (1938). I have not the least inkling about how expanding underinsured motorist coverage will affect insurance rates for motorists. The reason for my ignorance is that I am not available to be lobbied—a circumstance that I happily share with my colleagues.

Legislators and executives import sizable amounts of personal experience into their decisions, but they are also deluged with and force-fed information by outraged constituents, lobbyists, newspaper reporters, and their colleagues. In fact, for all the farce associated with political campaigns, the one valuable function campaigns perform is that they give politicians firsthand information about their constituents. Elected politicians suffer from many disabilities, but isolation from real life is not one of them. Judges do not have, and are not even allowed to have, any of these sources of information.

Politicians, of course, have much more than simple "access" to information. When I was in the state legislature, I used to enter the Daniel Boone Hotel in Charleston through a dark alley, wend my way through the trash cans and piled garbage around the hotel's service entrance, take the servants' elevator to the tenth floor, and then with the utmost stealth, walk up the stairs to my suite to avoid being snagged by interest group spokesmen. As a legislator, to sleep in my own house past 7:00 a.m. required silencing the bell on the telephone (taking the receiver off the hook was too obvious). Furthermore, the volume of incoming personal correspondence gave a whole new dimension to the expression "junk mail."

The legislature has many smart members and, on an issue like automobile insurance, consumers are represented by organized groups like the trial lawyers and the labor unions. If the legislature decided to define "uninsured motorists" a particular way, the legislature must have had a good reason. Furthermore, it is little solace to me that the majority's opinion is supported by "authority" from the land of *Texaco v. Pennzoil, Co.*, 729 S.W.2d 768, (Tex.App. 1987)—conceivably the least well constructed and most corrupt appellate opinion written in this century! Therefore, I dissent.