453 S.E.2d 624

**Teresa L. CASTLE and Leonard G. Castle, Jr., Plaintiffs Below, Appellants**

v.

**Terry WILLIAMSON and Sarah J. Williamson, Defendants and Third Party Plaintiffs Below, and Dairyland Insurance Company, Defendant Below, Appellee**

v.

**Tracy Lynn CASTLE, Third Party Defendant Below.**

Nos. 22157 and 22158.

Supreme Court of Appeals of West Virginia.

Submitted Oct. 5, 1994.

Decided Dec. 15, 1994.

David L. Stuart, Robin L. Godfrey, Charleston, for appellants.

Anita R. Casey, Meyer, Darragh, Buckler, Bebenek & Eck, Charleston, for appellee.

WORKMAN, Justice:

This case is before the Court upon the following certified questions posed by the Circuit Court of Kanawha County:

1. Whether underinsured motorist coverage, from the policy on the vehicle in which plaintiff was a guest passenger, is applicable where liability coverage under that same policy has previously been paid to plaintiff and where plaintiff thereafter commences a civil action alleging negligence against the second vehicle involved in the accident and assuming that plaintiff's damages are in excess of both liability policy limits?

2. Does the failure to obtain the full amount of the amount of the liability limits

from the tortfeasor's carrier operate as a waiver of the plaintiff's ability to recover underinsured motorist coverage where the underinsured motorist carrier has denied that underinsured motorist coverage is applicable, where the underinsured motorist carrier has waived any claim to subrogation against the tortfeasor and where the underinsured motorist carrier consented to a direct action against it?

The circuit court answered the certified questions as follows: 1) "No, underinsurance motorist coverage is not available in the above situation when the policy covering the vehicle specifically states that 'a motor vehicle owned by you and furnished for your regular use isn't an uninsured or underinsured motor vehicle[,]'" and 2) "No." We answer both of the certified questions in the affirmative.[1]

## I.

On May 18, 1990, a vehicle owned by Monnie K. Russell and being operated by Tracy Castle ("Russell/Castle vehicle") was involved in an accident with a vehicle owned by Terry Williamson and being operated by Sarah J. Williamson ("Williamson vehicle"). Both vehicles were being operated with the permission of the owners. Teresa Castle,[2] a guest passenger in the Russell/Castle vehicle, sustained serious injuries as a result of the accident. For the purposes of this proceeding, it is asserted that the damages of Teresa and her husband exceed the combined liability coverage limits of the Russell/Castle vehicle and the Williamson vehicle.

At the time of the accident the Russell/Castle vehicle was insured by Dairyland Insurance Company ("Dairyland"), the Appellee in this case, with liability limits of

$20,000/$40,000 and with underinsurance motorist coverage of $20,000/$40,000. The Williamson vehicle was insured by Nationwide Insurance Company ("Nationwide") with liability coverage limits of $25,000/$50,000.[3]

Following the accident, a claim was made by Teresa and Leonard Castle ("the Appellants") under Monnie Russell's insurance policy with Dairyland. Dairyland paid to the Appellants the sum of $20,000, which represented the full per person limits of liability coverage under the Dairyland policy. The release and settlement agreement entered into between Dairyland and the Appellants[4] provided, among other things, for a release of the owner and driver of the Russell/Castle vehicle.[5] Dairyland denied the applicability of underinsured motorist coverage, both as to underinsured liability of the Russell/Castle vehicle and as to any underinsured liability of the Williamson vehicle. Nevertheless, Dairyland consented "to a direct action against it for a determination of the existence of underinsured motorist coverage as to its insureds and/or other underinsured motorists and, to the extent necessary, a determination in said action of the amount of damages suffered by ... [the Appellants] together with payment thereof, subject to the policy limits, together with such other amounts as allowed by law." Dairyland agreed "[t]hat the acceptance of the aforesaid sum of Twenty Thousand Dollars ($20,000) by ... [the Appellants] from Dairyland shall in no way affect their right to seek underinsured motorist coverage from Dairyland...."

Subsequently, the Appellants filed suit in the Circuit Court of Kanawha County against the owner and operator of the other vehicle, Terry and Sarah Williamson, seeking damages for the negligent operation of the Wil-

---

**1.** Both the Appellants and the Appellee petitioned this Court for certified question review. The cases were consolidated for purposes of consideration and review.

**2.** Teresa Castle is. the sister-in-law of Tracy Castle.

**3.** At the time of the accident, neither the Appellant Teresa Castle, nor anyone in her household, had a vehicle, so no separate automobile insurance coverage of her own was available to her, whether liability, underinsured or otherwise.

**4.** This agreement does not appear to be part of the record. The parties, however, have entered into a stipulation of facts which references the entry of such an agreement and sets forth specific language from the agreement.

**5.** The Appellee maintains the release and settlement agreement provided that Teresa Castle "was injured in an automobile wreck she alleges was due, in part, to the negligence and carelessness on the part of Defendant, Tracy L. Castle."

liamson vehicle, and against Dairyland seeking a determination that underinsured motorist coverage existed as to the Russell/Castle vehicle and/or the Williamson vehicle. The Appellants and Dairyland filed cross motions for summary declaratory judgment. The trial court granted summary declaratory judgment to Dairyland on the underinsured motorist coverage issue. In the interim, the Appellants and Nationwide negotiated a settlement of claims asserted by the Appellants against the Williamsons for the sum of $22,500 of Nationwide's $25,000 liability limit on the Williamson vehicle.[6] The Appellants provided notice of this proposed settlement to Dairyland. Dairyland took no position on the proposed settlement except to assert that underinsured motorist coverage was not applicable under the facts of this case. Dairyland waived in writing any right or claim it had to subrogation against the Williamsons for the May 18, 1990, accident.

The Appellants moved the trial court to reconsider its previous order granting summary declaratory judgment to Dairyland on the issue concerning applicability of underinsured motorist coverage to the underinsured Williamson vehicle. At a hearing on this motion, the trial judge decided to certify the above-stated questions to this Court.

## II.

The Appellants concede that the portion of their declaratory judgment action seeking underinsured motorist coverage through the policy of the Russell/Castle automobile for any negligence of the driver of the guest passenger automobile is governed by this Court's ruling in *Alexander v. State Automo-*

bile Mutual Insurance Co., 187 W.Va. 72, 415 S.E.2d 618 (1992). In syllabus points three and four of *Alexander*, we held that

Underinsured motorist coverage is not available to a guest passenger unless the statute or policy language specifically provides for such coverage.

Where an insurance policy specifically excludes any motor vehicle owned by the policy holder from the definition of an 'underinsured motor vehicle,' then the underinsured motorist coverage was intended to protect the insured against losses caused by the negligence of another motorist who is underinsured. Liability insurance is intended to compensate an injured guest passenger for any negligence on the part of the driver/insured.

*Id.* at 73, 415 S.E.2d at 619. The Appellants contend, however, that *Alexander* is not dispositive of the present case since the underinsured motorist coverage is being sought for damages occasioned by negligence of the admittedly underinsured Williamson vehicle.

Dairyland argues that underinsured motorist coverage from the policy on the vehicle in which the Appellant Teresa Castle was a guest passenger, and under which liability coverage has previously been paid, is not available to the Appellants. Dairyland relies upon the following language from *Alexander*:

In short, underinsured motorist coverage is intended to compensate parties for injuries caused by other motorists who are underinsured. As long as the insured owns both the underinsured motorist policy in question and the vehicle, then the insured's vehicle will not be considered an

---

6. The parties stipulated that the agreement entered into between the plaintiffs, the Williamsons, and their insurance carrier specifically provided as follows:

The [Williamsons], except Nationwide Insurance Company, acknowledge that pursuant to West Virginia Law, they have been named as Defendants in a lawsuit and may remain named as defendants in order to pursue and collect underinsured motorist coverage insurance from other insurance companies. The [Castles] acknowledge that the [Williamsons] shall not be personally required to pay any further additional sums for which they may be legally liable as a result of these claims, including but not limited to any subrogation claims.

The [Castles] agree not to execute against the [Williamsons] for payment of any and all such additional sums arising from the aforesaid claim and [Castles] will seek said sums from the underinsured motorist coverage insurer [Dairyland]. The said TERRY WILLIAMSON and SARAH J. WILLIAMSON acknowledge that they may not be dismissed from said lawsuit and consent to their continued identification in said lawsuit to the extent required to maintain jurisdiction and venue over all parties named or unnamed herein who are not released by this document and to the extent required to maintain any claim for underinsured motorist coverage.

underinsured motor vehicle for purposes of the insured's own underinsured motorist coverage.

. . . .

. . . [U]nderinsured motorist coverage was intended to protect the insured against losses caused by the negligence of another motorist who is underinsured. Liability insurance is intended to compensate an injured guest passenger for any negligence on the part of the driver/insured.

*Id.* at 79–80, 415 S.E.2d at 625–26 (footnote omitted).

Dairyland maintains that the Appellants are attempting to recover two liability coverages by charging both drivers with negligence and then going back to the guest driver's policy to obtain yet a third coverage. The effect of this, they contend, is that the guest driver's carrier would no longer be able to pay liability coverage without also opening itself up to paying underinsured motorist coverage if the plaintiff chooses to assert liability against the driver of the other vehicle involved in the accident.

Recently in *Dairyland Insurance Company v. Bradley,* 192 W.Va. 199, 451 S.E.2d 765 (1994), we dealt with a factual situation somewhat similar to the one under consideration. There, the plaintiff was killed while a guest passenger on a motorcycle owned and operated by Jerry Warmbein. The accident resulted from the combined negligence of Mr. Warmbein and Donald D. Miller who was operating a Chevy Nova. Mr. Warmbein was insured by Dairyland and carried liability limits of $20,000 per person. His policy with Dairyland also included underinsured motorist coverage of $20,000 per person. Mr. Miller was insured by Auto Club with liability limits of $100,000 per person. A policy limits demand was made upon Dairyland and Auto Club for liability, and a demand was made upon Dairyland for the $20,-000 in underinsured motorist coverage. Auto Club paid its policy limits and Dairyland consented to the settlement. Dairyland then paid its liability limit of $20,000 but refused to pay the underinsured motorist benefits. Both parties moved for summary judgment on the underinsured coverage issue. In up-

holding the trial court's decision against Dairyland, we held:

> When the host driver's underinsured motorist policy language specifically provides coverage of a guest passenger as insured, a guest passenger who is injured by the concurrent negligence of her host driver and a *third party* may recover under the host driver's underinsured motorist insurance if the limits of liability of the *third party* tortfeasor are such as to make him an "underinsured motorist" within the contemplation of the host driver's underinsured motorist policy.

*Id.* at 199, 451 S.E.2d at 765, syllabus.

The policy on the host vehicle in *Bradley* provided "[a] *motor vehicle* owned by *you* or furnished for *your* regular use isn't an *uninsured* or *underinsured* motor vehicle." *Id.* at 200, 451 S.E.2d at 766. We distinguished our prior holding in *Alexander,* noting that although the host vehicle did not qualify as an underinsured vehicle under the language of the policy covering that vehicle, the vehicle of the third party tortfeasor did. We also found that the express language of the policy extended underinsured motorist coverage to the guest passenger by providing: "[a]nyone occupying, with your permission, a car we insure has the same rights and obligations you have under this insurance." *Id.* at 201, 451 S.E.2d at 767. Since Mr. Miller's vehicle was an underinsured vehicle, we found underinsured motorist benefits were available to the guest passenger under the express language of Mr. Warmbein's policy.

■ The policy issued by Dairyland covering the Russell/Castle vehicle in the case now before us also provides that "[a]nyone *occupying,* with *your* permission, a *car* we insure has the same rights and obligations *you* have under this insurance." Here, as in *Dairyland,* Dairyland has not pointed to any language in the policy that would clearly and unambiguously preclude the guest passenger from recovering under the liability and the underinsured provisions of the Dairyland policy. Accordingly, we find *Dairyland* to be dispositive of the first issue presented in this case. Under the facts of this case, the guest passenger may recover both liability and, if activated, underinsured motorist coverage

from the Dairyland policy. The trial court answered the first certified question erroneously.

### III.

■ The second question deals with exhaustion. The Dairyland insurance policy at issue here contains an "exhaustion clause" in the uninsured/underinsured motorist insurance amendatory endorsement which provides:

> We'll pay *damages* under this coverage caused by an accident with an *underinsured motor vehicle* only after the limits of liability under any applicable liability bonds or policies have been exhausted by payment of judgments or settlements.

The Appellants maintain that where the underinsured motorist carrier has denied coverage, where it has waived subrogation and where it consented to a direct action against it for underinsured motorist coverage, the failure to obtain 100 percent of the tortfeasor's liability coverage is not a waiver of underinsured motorist coverage. In contrast, Dairyland asserts that the Appellant's failure to obtain the full limit of liability coverage under the policies insuring each of the vehicles involved in the subject accident precludes the ability to claim underinsured motorist coverage under the Dairyland policy.

In addition to the express language in the policy, Dairyland relies upon this Court's decision in *Arndt v. Burdette*, 189 W.Va. 722, 434 S.E.2d 394 (1993). In *Arndt*, the appellant was involved in an automobile accident. Her car was struck in the front by a car owned and operated by Bobby Lee Burdette and was then struck in the rear by a vehicle operated by William Lehman. Both Mr. Burdette and Mr. Lehman were determined to have contributed to the cause of the accident. The Burdette vehicle and the Lehman vehicle were insured by separate insurance companies. The appellant's insurance carrier was Westfield Insurance Company ("Westfield"). The insurance policy held with Westfield prohibited the appellant from entering into any agreement which prejudiced the rights of the insurer and from settling a claim potentially involving underin-

surance without the carrier's written consent. The appellants filed claims with both Mr. Burdette's and Mr. Lehman's carriers and informed Westfield that there might be a need for underinsurance coverage. A settlement was entered into with Mr. Burdette's insurance carrier which exhausted the policy limits. The appellant then accepted, without the appellant's carrier's written consent and over such carrier's objection, a small offer of settlement from the Lehman insurance carrier which did not exhaust that policy's limits.

In *Arndt*, we found the consent-to-settle clause of the policy pertaining to underinsured motorist coverage was valid and enforceable as a means to protect the insurer's statutory subrogation rights. Westfield also took the position that in order to recover underinsurance benefits, the appellants in that case had to exhaust the limits of the tortfeasor's liability policies. We found this position to be supported by our holding in *Pristavec v. Westfield Insurance Co.*, 184 W.Va. 331, 400 S.E.2d 575 (1990) that:

> 'in light of the preeminent public policy of the underinsured motorist statute, which is to provide full compensation, not exceeding coverage limits, to an injured person for his or her damages not compensated by a negligent tortfeasor, this Court holds that underinsured motorist coverage is activated under *W.Va.Code*, 33–6–31(b), as amended, when the amount of such tortfeasor's motor vehicle liability insurance actually available to the injured person in question is less than the total amount of damages sustained by the injured person, regardless of the comparison between such liability insurance limits actually available and the underinsured motorist coverage limits.'

189 W.Va. at 729, 434 S.E.2d at 401 (quoting *Pristavec*, 184 W.Va. at 338, 400 S.E.2d at 582 and syl. pt. 5).

We also found Westfield's position on exhaustion to be supported by *Postlethwait v. Boston Old Colony Insurance Co.*, "where we held that a plaintiff is not precluded from suing an underinsurance carrier 'if the plaintiff has settled with the tortfeasor's liability carrier *for the full amount of the policy and*

*obtained from the uninsured/underinsured carrier a waiver of its right of subrogation against the tortfeasor.'"* 189 W.Va. at 729, 434 S.E.2d at 401 (quoting *Postlethwait,* 189 W.Va. 532, 432 S.E.2d 802, Syl. Pt. 4 (1993)) (emphasis added).

We concluded in *Arndt:*

the Appellants had not only received $20,-122.95 from a settlement for Mr. Burdette's policy limits, but the Appellants also had $100,000/$300,000 in liability coverage actually available from Mr. Lehman's insurer, Allstate. The Appellant's, however, were willing to settle for only $1,250 from Mr. Lehman's available liability insurance coverage. Under our holding in *Pristavec,* the Appellants' underinsurance coverage was not activated. Further, pursuant to *Postlethwait,* the Appellants are precluded from suing the Appellee since the Appellants settled for less than the full amount of the tortfeasor's liability coverage and the Appellants failed to obtain a waiver from the Appellee of its subrogation rights.

189 W.Va. at 729, 434 S.E.2d at 401. Since the appellants in *Arndt* violated the consent-to-settle provision in their insurance policy, failed to obtain a waiver of its carrier's subrogation rights and settled for less than the full amount of the tortfeasor's liability coverage they were precluded from pursuing underinsurance from their insurance carrier.

In the case before us, the amendatory endorsement of the Dairyland insurance policy dealing with uninsured/underinsured motorist insurance contains clear and unambiguous language that underinsurance under the policy is only activated once the limits of liability under any applicable liability policies have been exhausted. It is axiomatic that, "[w]here provisions in an insurance policy are plain and unambiguous and where such pro-

visions are not contrary to a statute, regulation, or public policy, the provisions will be applied and not construed." Syllabus, *Tynes v. Supreme Life Insurance Co.,* 158 W.Va. 188, 209 S.E.2d 567 (1974).

■ Underinsurance coverage is an optional coverage that an insurer may purchase and is in the nature of excess coverage. It is not intended to be liability insurance. If we were to validate the Appellants' position and allow the Appellants to proceed under the guest passenger car's carrier's underinsurance policy without first exhausting the liability limits of the Williamson car's carrier's policy, we would be ignoring the express policy language dealing with exhaustion and would, in effect, be turning underinsurance coverage into additional liability coverage.[7] The language of the policy in this case clearly precludes underinsured coverage since the limits of liability of the tortfeasor were not exhausted.

In the recent case of *Bradley,* the plaintiffs settled for the full amount of the liability policy limits before seeking coverage under the underinsured policy. That is not the case here. Here, the Appellants chose to settle for less than the full amount of the second carrier's liability policy. In light of the express policy provision requiring exhaustion and the failure of the Appellants to exhaust the liability coverage under the second carrier's policy, we conclude the Appellants cannot now seek underinsurance coverage under the Dairyland policy.

■ Accordingly, we hold that where a guest passenger is injured by the concurrent negligence of her host driver and a third party, the guest passenger may not recover under the host driver's underinsured motorist insurance if the host driver's underinsured motorist policy contains clear and unambiguous language which requires the ex-

---

**7.** The Appellants ask this Court to find such an "exhaustion clause" to be void and unenforceable as it precludes the insured from settling his claim against the tortfeasor for an amount less than the tortfeasor's liability limits. The Appellant also asks that we fashion a rule that the underinsured motorist coverage is only available for damages in excess of the tortfeasor's available liability coverage. Thus, such a rule would provide that to the extent the insured victim

accepts less than the tortfeasor's liability coverage in settlement, the gap between the amount of the settlement and the tortfeasor's available liability limit is attributed to the insured victim with the underinsured motorist carrier only being responsible to the extent damages exceed the amount of the available coverage.

These arguments fail in light of the clear and unambiguous language of the exhaustion clause which is valid and enforceable.

haustion of applicable liability coverage before the underinsured motorist coverage is activated and the guest passenger fails to obtain the full amount of the liability limits from the third-party tortfeasor's carrier. We therefore find the circuit court answered the second certified question erroneously.

Having responded to the questions certified to us by the Circuit Court of Kanawha County, this case is hereby dismissed from the docket of this Court.

Certified questions answered; case dismissed.

WORKMAN, J., delivered the Opinion of the Court.

BROTHERTON, C.J., did not participate.

MILLER, J. (Ret.), sitting by temporary assignment.